SCIRICA, Circuit Judge,
concurring in part and dissenting in part:
Although I join in Parts II and III of the opinion I do not believe the district court’s rulings on the testimony of Dr. Carpenter and Dr. Altschuler require granting a new trial.
I.
Dr. Carpenter, a specialist in internal medicine, was John Holbrook’s treating physician. The district court did not permit Dr. Carpenter to state that he diagnosed Hol-brook with mesothelioma because pathologists at Holy Cross Hospital rather than Dr. Carpenter actually “made” the diagnosis. (“[Carpenter] himself did not make the diagnosis. He may have relied upon a report of a diagnosis.”). While the district court’s ruling may reflect too rigid a view of the diagnostic process, I do not believe its limitation of Dr. Carpenter’s testimony constituted reversible error. Reversal and remand for a new trial is justified only where a trial judge’s erroneous exclusion of evidence is not harmless. Fed.R.Civ.P. 61 provides in part:
No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice.
Although the district court excluded testimony by Dr. Carpenter, there still was substan *789 tial evidence from other sources that Hol-brook suffered from mesothelioma. Most important was the testimony of Dr. Reineke,[1] a board certified pathologist and the chief of pathology at Holy Cross Hospital, who testified Holbrook had mesothelioma.[2]
The crucial issue at trial was causation— whether John Holbrook died from mesotheli-oma as a result of asbestos exposure or as a result of radiation exposure. Given the ample evidence that John Holbrook suffered from mesothelioma, it is highly probable the district court’s refusal to allow Dr. Carpenter to state his diagnosis did not contribute to the judgment of the jury. Any error was harmless.
II.
At a pretrial deposition, Dr. Altschuler, who was board certified in internal and pulmonary medicine, admitted he had no familiarity with the medical literature on the relationship between radiation and mesothe-lioma. He said he was not aware that radiation had ever been linked to mesothelio-ma. Nevertheless, the district court did not preclude Dr. Altschuler from testifying based on knowledge derived from medical literature he read subsequent to his deposition but prior to trial. (“You may ask him what literature he refers to with respect to radiation and what does it say, if you choose.”). In short, although the court refused to qualify Dr. Altschuler as an expert on radiation, it allowed him to testify about what he knew.
In view of Dr. Altschuler’s background and the court’s admission of his testimony on radiation and mesothelioma, I cannot conclude the district court abused its discretion in refusing to qualify Dr. Altschuler as an expert on radiation and limiting his testimony. Moreover, plaintiff called Francis Masse, director of the radiation protection programs at the Massachusetts Institute of Technology, and Dr. David Hoel, chairman of the Department of Biometry and Epidemiology at the Medical University of South Carolina, to testify that radiation did not cause her husband’s illness. In light of their testimony, the district court’s limitation on Dr. Altschuler’s testimony was harmless.
III.
For the foregoing reasons, I would deny plaintiffs request for a new trial.

. The testimony of Dr. Reineke was taken by videotape and presented at trial.

. Despite the district court’s rulings, evidence presented to the jury included unredacted references to mesothelioma in hospital medical records. Furthermore, Dr. Demopoulos, a board certified pathologist, testified that the autopsy report listed "malignant mesothelioma” as the cause of Holbrook's death.